|   |   |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **DISTRICT OF NEVADA** |

| | |
|---|---|
| CHERYL DAVIS, | Case No.: 2:18-cv-02181-APG-VCF |
| Plaintiff | **Order Granting Motion to Dismiss and Motions to File Supplemental Authority** |
| v. | |
| CARRINGTON MORTGAGE SERVICES, LLC, et al., | [ECF Nos. 49, 76, 79] |
| Defendants | |

This case arises from a dispute over the reporting of plaintiff Cheryl Davis's credit information by credit reporting agencies (CRAs), including the remaining defendant, Experian Information Solutions, Inc. (Experian). In her second amended complaint, Davis alleges that Experian violated sections 1681e and 1681i of the Fair Credit Reporting Act (FCRA) and Nevada law by failing to report the timely payments she made on her Carrington Mortgage Services, LLC (CMS) account and by failing to conduct a reasonable reinvestigation into the account to correct her information. She alleges that upon receiving her dispute letter, Experian did not inform CMS of the dispute. She alleges that instead Experian has a policy of finding consumer disputes frivolous or irrelevant when a consumer requests that Experian report positive payment history from a furnisher. She also alleges that Experian's reporting deviated from industry guidelines. Finally, Davis alleges that Experian's suppression of her positive payment history caused her various injuries including negative impacts on her creditworthiness, reduced access to reasonable credit opportunities, informational injury, loss of enjoyment, out-of-pocket expenses in challenging Experian's conduct, and less favorable refinancing terms with CMS.

Experian moves to dismiss Davis's second amended complaint, arguing that Davis has not plausibly alleged a concrete injury that is fairly traceable to the challenged conduct. It also argues that Davis has failed to allege an actual inaccuracy, because her mortgage was included in her Chapter 13 bankruptcy and Experian thus did not have to report continued payments made on an account discharged in bankruptcy. Experian argues that Davis's dispute concerns the legal status of her account, but CRAs are not required to make judgments about which debts are included in bankruptcy proceedings. And it argues that Davis has not plausibly alleged that its procedures were unreasonable. Finally, Experian argues Davis did not dispute that her CMS account was included and discharged in bankruptcy, only that she wanted Experian to report positive payment history. Accordingly, Experian argues that it was not obligated under § 1681i or Nevada Revised Statutes § 598C.160 to reinvestigate the accuracy of whether the account was included in Davis's bankruptcy.

Davis responds that she sufficiently alleged a concrete injury fairly traceable to Experian's conduct. She argues that she alleged her mortgage was excepted from discharge, so Experian's reporting was inaccurate when it reported her CMS account was discharged in her Chapter 13 bankruptcy, rather than reporting her timely payments. Davis also argues that Experian unreasonably found her dispute to be frivolous or irrelevant, and failed to conduct a reasonable reinvestigation into her disputed information.

I grant Experian's motion and dismiss this case.[1]

////

////

---

[1] Both parties moved to file supplemental authority. I grant those motions.

# I. BACKGROUND[2]

Davis filed for Chapter 13 bankruptcy on June 27, 2011. ECF No. 46 at 4. At that time, she owned real property subject to a first mortgage deed of trust, serviced by BAC Home Loans Servicing (BAC). *Id.* Her mortgage was transferred to CMS in April 2015, after her bankruptcy proceedings concluded. *Id.* Davis's Chapter 13 plan was confirmed in January 2012. *Id.* Based on the plan, Davis made ongoing payments on her mortgage. *Id.* On March 21, 2013, Davis's modified Chapter 13 plan was confirmed. ECF No. 49-3 at 45. BAC was identified in the plan as a CLASS 1 "Secured claims for real estate loans and/or real property taxes that were current when the petition was filed." *Id.* at 48.[3] Davis was obligated to "pay the ongoing contract installment payment" on her mortgage. *Id.* She was discharged from bankruptcy in September 2013. *Id.*

On May 19, 2017, Davis received an Experian consumer disclosure, which listed her CMS account as having a balance of $0 and a status of discharged through Chapter 13 bankruptcy/never late. ECF No. 49-2 at 6. In October of that year, Davis sent Experian a dispute letter, stating, "I obtained information directly from [CMS] in response to an information request . . . [showing] I was 'current' with my payments from August 10, 2015 through August 10, 22017 [sic] (the "Positive Credit Data"). However, you did not include all this information in

---

[2] The facts are taken from Davis's second amended complaint and the exhibits attached to the motion and response that the complaint necessarily relies on. These include Davis's dispute letter, Experian's consumer disclosure and reinvestigation response, and Davis's bankruptcy plan confirmation and order of discharge. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[3] Comparably, if Davis was delinquent on her mortgage at the time she filed her bankruptcy petition, it would have been identified as a CLASS 2 claim, which is not modified by the plan and the creditor retains its existing lien until paid in full. *Id.*

my attached credit file and reporting this information is necessary to provide 'complete' information about this tradeline . . . ." ECF No. 49-3 at 2.

Attached to her dispute was a letter from CMS dated August 18, 2017. *Id.* at 23. CMS stated, "[u]pon review, the account reflects a Chapter 13 Bankruptcy was filed on June 27, 2011 and was later discharged on September 4, 2013." *Id.* CMS also noted that its records indicated that Davis consented to a credit inquiry by CMS in December 2016 during a refinance application process with a loan officer. *Id.* at 24. The letter included a chart detailing what CMS sent to the four major CRAs, including Experian, which showed that Davis's account status was current. *Id.* at 25. CMS also included a disclosure which noted that "[i]f you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides information notice regarding the status of the loan." *Id.* at 26.

On October 23, 2017, Experian responded to Davis, stating it was "unable to honor [her] request or a portion of it based on the limited amount of information regarding [her] dispute." ECF No. 65-1 at 2. In the CMS tradeline, Experian noted that the account was updated from its processing of Davis's dispute in August 2017. *Id.* at 7. It still reported a balance of $0 and had a status of discharged through Chapter 13 bankruptcy. *Id.* Davis did not see the reinvestigation results until after she filed her federal complaint. ECF No. 46 at 11. On April 11, 2018, Davis received another disclosure from Experian. *Id.* at 13. The CMS tradeline was deleted, even though Davis instructed in her dispute letter not to delete the tradeline. *Id.*

/ / / /

/ / / /

4

## II. ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. If I dismiss the complaint, I should grant leave to amend even if no request to amend is made "unless [I] determine[] that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

### A. Article III Standing

To have subject matter jurisdiction over a case, "the party bringing the suit must establish standing." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). The plaintiff must allege an "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (internal quotation omitted). At the pleading stage, the plaintiff must allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Id.* at 1548. For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id.* (internal quotations omitted). "A concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal quotations omitted). For FCRA claims, a bare procedural violation, alone, is not sufficient to establish a concrete injury. *Id.* at 1550. But a plaintiff can allege a concrete yet intangible harm if the "particular procedural violations . . . entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

Davis has sufficiently pleaded that she has standing to pursue her claims. Experian relies on *Jaras v. Equifax*, *Inc.* to argue that Davis lacks standing because she made only broad generalizations about how lower FICO scores impact lending decisions generally, "without any specific allegation that lower FICO scores impact lending decisions regarding individuals who are already in Chapter 13 bankruptcy." 766 F. App'x 492, 495 (9th Cir. 2019). However, Davis alleges specifically that her creditworthiness impacted her mortgage refinancing with CMS. It is not implausible to allege that CMS, even knowing that Davis was fulfilling her monthly mortgage payments, would rely on a FICO score when making refinancing determinations. CMS obtained Davis's credit report from Experian at least twice, in December 2016 and March 2017. ECF No. 49-2 at 15. Davis plausibly alleges that the suppression of the positive payment history impacted her FICO score negatively because reporting such payments would help offset the negative Chapter 13 bankruptcy reporting. As such, Davis has alleged a concrete and particularized injury fairly traceable to Experian's conduct.

**B. Section 1681e and 1681i**

FCRA § 1681e outlines CRA compliance procedures and requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to

6

assure maximum possible accuracy of the information concerning the individual about whom the report relates." To bring a claim under this provision, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

If a consumer disputes the accuracy of information in his file, § 1681i requires the CRA to "conduct a free and reasonable investigation within thirty days of a consumer informing the CRA of disputed information." *Shaw*, 891 F.3d at 756 (citing 15 U.S.C. § 1681i(a)(1)(A)). To bring a claim under § 1681i, an actual inaccuracy must exist. *Id.*

"Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting." *Id.* (quotations omitted). Reporting can be inaccurate if it is patently incorrect or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quotation omitted).

The inquiry does not end at establishing an inaccuracy, however. Once a plaintiff makes a prima facie showing of inaccurate reporting, to sustain liability under § 1681e(b) she must show that the CRA did not follow reasonable procedures in obtaining her credit information. *Shaw*, 891 F.3d at 755. "The reasonableness of a CRA's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Id.* (internal brackets and quotation marks omitted) (citation omitted). And to sustain liability under § 1681i(a), a plaintiff must demonstrate that she notified the CRA of the inaccuracy, the dispute was not frivolous or irrelevant, the CRA failed to respond to the dispute, and this failure caused plaintiff to suffer actual damages. *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073 (D. Or. 2011).

Davis alleges that Experian inaccurately reported that her CMS account was included and discharged in her Chapter 13 bankruptcy. Experian argues that its reporting was accurate because her CMS account was included in her bankruptcy, as evidenced by the letter from CMS stating that the "account reflects a Chapter 13 Bankruptcy was filed on June 27, 2011 and was later discharged on September 4, 2013." Davis argues, however, that her mortgage, which was serviced initially by BAC and transferred to CMS, was excepted from discharge under bankruptcy law.[4] She argues that her mortgage was excepted from discharge under 11 U.S.C. § 1328(a) because her mortgage was provided for under 11 U.S.C. § 1322(b)(5), which allows for the curing of any default and maintenance of payments on claims on which the last payment is due after the date on which the final payment under the plan is due. She further argues that § 1322(b)(2)'s anti-modification provision prohibits her mortgage from being discharged because it is secured by her primary residence.

Even assuming, without deciding, that Davis has plausibly alleged an inaccuracy, her claim fails because she has not plausibly alleged that Experian's procedures were unreasonable.[5] Davis argues in her response that it was unreasonable for Experian to determine the legal question of whether the CMS mortgage was discharged in bankruptcy, rather than verify that

---

[4] Notably, the documents Davis relies on in her second amended complaint suggest that her mortgage was included in her bankruptcy and not excepted from discharge. *See* ECF No. 49-3 at 45 (identifying her BAC mortgage as a CLASS 1 claim, and comparing CLASS 1 claims to CLASS 2 claims, which are not modified by the plan and the creditor retains its existing lien, suggesting that CLASS 1 claims are modified by the plan unless otherwise specified); *see also id.* at 23 (CMS letter to Davis stating her account reflects a Chapter 13 bankruptcy that was discharged in September 2013). If her case was to proceed, Davis would have to provide evidence that her mortgage was in fact excepted from discharge.

[5] The same applies to Davis's argument about Metro 2 guidelines creating an inaccuracy. I have previously held that deviating from Metro 2 guidelines does not necessarily create a violation under the FCRA. *Jacqueline Steinmetz v. American Honda Finance, et al.*, --- F. Supp. 3d ----, No. 2:19-cv-00067-APG-EJY, 2020 WL 1324989, at *5 (D. Nev. Mar. 20, 2020).

information with CMS. But that presumes Experian understood that Davis was disputing the fact that the account was discharged in bankruptcy, instead of merely that she wanted her positive payments reported. Nowhere in her dispute letter did she inform Experian that she was disputing the inclusion of her CMS account in her Chapter 13 bankruptcy. And the CMS letter attached to her dispute stated that the account reflected a Chapter 13 bankruptcy that was discharged in 2013.

Based on the facts of this case, it was reasonable for Experian to report Davis's CMS account as included and discharged in her Chapter 13 bankruptcy when there is a bankruptcy on record and no contrary information to indicate that her account was excepted from discharge. Davis's Chapter 13 plan identified her mortgage as a CLASS 1 claim and, unlike in other sections such as CLASS 2 claims, the plan provided no further information about whether her mortgage was excepted from discharge, was modified by the plan, or whether the creditor retained its existing lien until paid in full. And Davis's bankruptcy discharge order does not specify which of her debts were discharged and which were not. *See* ECF No. 49-3 at 55. Accordingly, Davis has not plausibly alleged that Experian failed to follow reasonable procedures in determining Davis's CMS account was discharged in her Chapter 13 bankruptcy because Davis's letter did not put Experian on notice of the nature of her dispute and, in any event, the furnisher's letter and the bankruptcy documents provide no contrary information.

CRAs are neither qualified nor obligated to determine the legal status of a plaintiff's debt. *DeAndrade v. TransUnion LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (plaintiff's dispute challenging the mortgage's validity "is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA"). Because Davis's bankruptcy

9

documents do not specify whether her mortgage was excepted from discharge, her claims against Experian are predicated on a complicated legal question about the status of her mortgage that divides even courts. *Compare In re Kent*, No. 09-35124-TMB13, 2016 WL 9488860, at *3-5 (Bankr. D. Or. Jan. 22, 2016) (holding debtor's mortgage was provided for by Chapter 13 plan, was not excepted from discharge because the plan did not include a cure of an arrearage or other default on the mortgage, and § 1322(b)(2)'s anti-modification provision did not implicate conclusion that debtor's personal liability on the mortgage was discharged) *and In re Sicroff*, 401 F.3d 1101, 1104 (9th Cir. 2005) ("[E]xceptions to discharge should be confined to those plainly expressed, and should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start.") (internal quotations and citations omitted), *with In re Hunt*, No. 14-02212-5-DMW, 2015 WL 128048, at *4 (Bankr. E.D.N.C. Jan. 7, 2015) (holding that discharging a home mortgage debt would be an impermissible loan modification under § 1322(b)(2)). Accordingly, Davis has not plausibly alleged that Experian acted unreasonably when its procedures, no matter how reasonable, would be unable to resolve this legal question.[6]

The same applies to Davis's claims under § 1681i and Nevada Revised Statutes § 598C.160. Davis failed to notify Experian of the inaccuracy she now asserts as the basis of her claims. So Experian was not obligated reinvestigate the accuracy of whether her CMS account was discharged in her bankruptcy, and I need not consider whether Davis's dispute was frivolous or irrelevant.

---

[6] Arguably, the only practical means to determine whether Davis's mortgage was discharged or not is for Experian to "scour all the [bankruptcy] filings" and "consult with an attorney to determine whether a certain account may fall into one of the many exceptions to discharge," and even then the answer may not be clear without a court determination. This far exceeds Experian's obligations under the FCRA to follow reasonable procedures to assure maximum possible accuracy. *Hupfauer v. Citibank, N.A.*, No. 16-c-475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016).

10

**C. Leave to Amend**

Davis asks that I grant her leave to amend under Federal Rule of Civil Procedure 15(a)(2) to cure any of her pleading deficiencies because she has had no opportunity to assess what factors I may find lacking. ECF No. 59 at 25. She asks that I at least grant jurisdictional discovery to determine what credit scores or consumer reports Experian issues to others and the information on those reports. *Id.* Experian responds that Davis has already amended her complaint twice and another attempt would not cure her deficient claims. Experian also argues that her request for jurisdictional discovery should be denied.

I am not dismissing Davis's claims on jurisdictional grounds. Consequently, I deny her request for jurisdictional discovery. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (noting discovery may be appropriately granted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts in necessary.").

Leave to amend a pleading should be freely given when justice so requires. Fed. R. Civ. P. 15(a). Amendment generally should be denied "only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011). "Rule 15(a) is designed to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.* (citation omitted).

I deny leave to amend because amendment would be futile. Davis's second amended complaint alleges FCRA violations against Experian based on inaccurate reporting and unreasonable procedures and reinvestigations. Amendment would not resolve the fact that Experian followed reasonable procedures in its reporting and reinvestigation because Davis's dispute letter did not put Experian on notice of the nature of her dispute, the CMS letter attached to Davis's dispute and the bankruptcy documents do not show her mortgage was excepted, and

Experian is neither qualified nor obligated to resolve a complex legal question regarding the status of Davis's mortgage.

If Davis had additional facts demonstrating that her mortgage was in fact excepted from discharge and that she notified Experian of this information, she would have alleged those facts in her second amended complaint or in her opposition to Experian's motion, to demonstrate that amendment would not be futile. She did not do so. I have the bankruptcy court records, Davis's dispute letter, CMS's letter, and Experian's reinvestigation results, and there is nothing to suggest that other facts or communications exist. Accordingly, I dismiss Davis's claims and deny her leave to amend.

## III. CONCLUSION

I THEREFORE ORDER that the parties' motions for leave to file supplemental authority **(ECF Nos. 76, 79) are GRANTED**.

I FURTHER ORDER that defendant Experian Information Solutions, Inc.'s motion to dismiss **(ECF No. 49) is GRANTED** and plaintiff Cheryl Davis's second amended complaint is dismissed with prejudice. The clerk of court is instructed to enter judgment in favor of defendant Experian Information Solutions, Inc. and against plaintiff Cheryl Davis, and to close this case.

DATED this 10th day of April, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE